IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


MOUNTAIN STATES MUTUAL
CASUALTY COMPANY,

       Plaintiff/Counter-Defendant

vs.                                                                                     No. 09-CV-314-MCA/WDS

SOUTHERN COLORADO CONSTRUCTION, INC.,
and CHARLES SCHERRER,

       Defendants/Counter-Claimants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Mountain States Mutual Casualty Company's *Motion for Partial Summary Judgment on the Declaratory Action*. [Doc. 59] The Court has considered the motion and supporting memorandum, Defendants' response, and Mountain States' reply, and is otherwise fully informed. For the reasons that follow, the Court will deny the instant motion.

**BACKGROUND**

This insurance coverage dispute was brought as a declaratory judgment action by the insurer, Mountain States Mutual Casualty Company ("Mountain States"), against its named insured, Southern Colorado Construction, Inc.("SCCI"), and Charles Scherrer, a shareholder and officer of SCCI. [Doc. 1] Mountain States seeks a declaration that it does not have a duty to defend or indemnify SCCI and Scherrer with respect to a civil lawsuit filed in New Mexico state court.

Mountain States issued a business auto policy ("BAP"), designating SCCI as the named insured. The BAP contains the following provisions:

**SECTION I - COVERED AUTOS**

. . . .

**A.     DESCRIPTION OF COVERED AUTO DESIGNATION SYMBOLS**

> 9 =  NONOWNED "AUTOS" ONLY.  Only those "autos" you do not own, lease, hire, rent or borrow that are *used in connection with your business*.  This includes "autos" owned by your employees *. . . but only while used in your business. . . .*"

**SECTION II - LIABILITY COVERAGE**

**A.     COVERAGE**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."
. . . .

We have the right and duty to defend any "suit" asking for damages. . . to which this insurance applies.  However, we have no duty to defend "suits" for "bodily injury" or "property damage" . . .not covered by this coverage form. . . .

**1.     WHO IS AN INSURED**

> The following are "insureds":

. . . .

a.     You[1] for a covered "auto."

. . . .

[Doc. 1-2 at 28-29 (emphasis added)]

Mountain States issued a commercial umbrella liability policy (the "Umbrella Policy") to SCCI as the named insured.  The Umbrella Policy contains the following provisions:

**SECTION I - COVERAGE**

---

[1] The BAP provides that "[i]f the Named Insured is a corporation. . . "you". . . refers to the corporation . . . and not to the principals, officers or any other natural person."

    1.       Insuring Agreement

           a.       We will pay on behalf of the insured all sums in excess of the "retained limit" which the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. . . .

. . . .

**SECTION II - WHO IS AN INSURED**

    1.       If you are designated in the Declarations as:

. . .

           d.       An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, *but only with respect to their duties as your officers or directors*. Your stockholders are also insureds, but only with respect to their liability as stockholders.

[Doc. 1-1 at 12, 18 (emphasis added)]

      Mountain States admits that these policies were in effect from January 20, 2008 to January 20, 2009. [Doc. 1 at 2, ¶ 7]

      When the record is viewed in the light most favorable to SCCI and Scherrer, the nonmovants, substantial evidences supports the following facts:

      Scherrer is SCCI's president and sole shareholder. [Doc. 29-2 at 1] Scherrer owns a Harley-Davidson motorcycle, which he rides for recreation.[Doc. 59 at 3, ¶ 4] Susan and Stuart Phelps are fellow motorcycle enthusiasts. [Doc. 59 at 3, ¶ 6] Scherrer accompanied the Phelps on motorcycle trips at least two or three times a year. [Doc. 59 at 3, ¶ 7] Several weeks prior to Memorial Day of 2008, Stuart Phelps told Scherrer that he was going to Albuquerque prior to attending a motorcycle event in Red River, New Mexico. [Doc. 59 at 3, ¶ 8] Stuart Phelps mentioned that he and Susan planned to visit Adobe Building Supply ("Adobe") while in

3

Albuquerque to drop off a packet of drawings of custom lumber to be used in the construction of the Phelps' new home. [Doc. 59-1 at 11] The Phelps told Scherrer about various types of wood products, such as vigas, beams, dimensional lumber and handrails, that Adobe sells. [Doc. 59-1 at 11] Scherrer decided to accompany the Phelps to Albuquerque, with the intention of visiting Adobe to determine whether Adobe sold products that SCCI might use in its construction and remodeling business. [Doc. 64-1 at 2] Scherrer was particularly interested in determining if Adobe could provide custom wood doors. [Doc. 64-1 at 8-9] Scherrer described the excursion as follows:

> Well, then after we went to Albuquerque to [Adobe] and dropped off [Stuart Phelps'] plans and do whatever else [Stuart] wanted to do, and I would do what I wanted to do there, then we would proceed up to Taos and meet friends. . . It was a Memorial Day weekend, which is in conjunction with the Red River Run in Red River, New Mexico.
> . . . .
>
> On this particular case, I had a business reason to go to Albuquerque, and then a personal reason after that.

[Doc. 59-1 at 13] Scherrer told SCCI employee Alex Nuzzo before Scherrer left that he was going to visit a building supply store in Albuquerque. [Doc. 29-4 at 5-6] Scherrer told SCCI employee Karen Nuzzo before he left that he was "going on a motorcycle trip, that they were going to make a stop to look at a possible supplier for, you know, wood products that we use in historical renovations." [Doc. 29-5 at 4] Scherrer has admitted that he would not have made the trip to Albuquerque if the Phelps had not planned to visit Adobe. [Doc. 59-1 at 50]

Scherrer and the Phelps left Pueblo, Colorado on the afternoon of Thursday, May 22, 2008. [Doc. 59-1-21] They spent the night in Las Vegas, New Mexico. [Doc. 59-1 at 21] The next morning, they continued on to Albuquerque. [Doc. 59-1 at 46] Stuart Phelps used a GPS receiver mounted on his motorcycle to plot a route from Las Vegas to Adobe. [Doc. 59-1 at 46]

Scherrer was following the Phelps' motorcycle. [Doc. 59-1 at 48] Near the intersection of the I-25 frontage road and Alameda Place, N.E., the Phelps' motorcycle slowed down in preparation for a right turn. [Doc. 59-1 at 48] Scherrer's motorcycle rear-ended the Phelps' motorcycle. Both Susan and Stuart were severely injured in the accident. [Doc. 59-1 at 48]

The Phelps sued Scherrer for personal injury in Bernalillo County District Court. After the Complaint in the present declaratory judgment action was filed, the Phelps amended their state court complaint to add SCCI as a defendant.

**DISCUSSION**

Fed. R. Civ. P. 56(b) provides that "[a] party against whom relief is sought may move, with or without supporting affidavits, for summary judgment on all or part of the claim." Rule 56(c)(2) provides that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The Court of Appeals has succinctly summarized the standards governing a Rule 56 motion for summary judgment:

> Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . .the moving party is entitled to a judgment as a matter of law." A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented.
>     The burden of showing that no genuine issue of material fact exists is borne by the moving party. Where . . .the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy this burden by identifying "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."

*Adamson v. Multi Community Diversified Serv., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008)

(citations omitted).[2]  "The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment." *Breyers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998). "It is not [the court's] province at the summary judgment stage to weigh the evidence or to make credibility determinations." *Sanders v. Southwestern Bell Telephone, L.P.*, 544 F.3d 1101, 1105-06 (10th Cir. 2008).

A federal court exercising diversity jurisdiction applies the forum state's substantive law, including the forum's choice of law principles. *Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 808 (10th Cir. 2009). In interpreting insurance policies, New Mexico generally follows the choice of law principle of *lex loci contractus*. *Shope v. State Farm. Mut. Co.*, 122 N.M. 398, 399-401 (1996). Mountain States is a New Mexico corporation with its principal place of business in Albuquerque, New Mexico. SCCI is a Colorado Corporation with its principal place of business in Pueblo, Colorado.  Scherrer resides in  Pueblo, Colorado.  The two policies in question were purchased in Colorado through a Colorado insurance agent, Brown & Brown of Colorado. [Doc. 1-1 at 2, 9; Doc. 1-2 at 2, 4, 7, 12] Both policies include Colorado-specific endorsements. [Doc. 1-1 at 30-31; Doc. 1-2 at 26-27] The Court will assume for purposes of the instant motion that under New Mexico choice of law principles, the substantive law of Colorado governs the interpretation of the polices.  *See id.* at 400.

The Court has carefully canvassed reported decisions of Colorado's appellate courts. The Court has found a single opinion discussing the phrase "but only while used in your business. . . ." *Radil v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 207 P.3d 849, 854 (Colo. Ct. App. 2008).  In

---

[2]The fact that Mountain Mutual is the nominal plaintiff in this declaratory judgment action does not alter the underlying burden of proof: "the party seeking to show that insurance should apply to a loss . . has the burden of proof." *James River Ins. Co. v. Rapid Funding, LLC*, Civ. No. 07-cv-01146-CMA-BNB, 2008 WL 5378143 *4 (D. Colo. Dec. 23, 2008).

*Radil*, the meaning of the phrase was not in dispute.  The Court was unable to locate a Colorado appellate opinion interpreting the phrase "but only with respect to their duties as your officers or directors."

Mountain States, acknowledging that Colorado courts have not construed the terms at issue in this case, argues that coverage turns upon the common-law test for determining whether an employee is acting within the scope of his employment. [Doc. 59 at 10-11; Doc. 70 at 6] Under Colorado law, "an employer is liable for the torts of an employee acting within the scope of employment.  The employer is liable if the employee's conduct was motivated by an intent to serve the employer's interests and connected to acts the employee was authorized to perform." *Stokes v. Denver Newspaper Agency, LLP*, 159 P.3d 691, 693 (Colo. Ct. App. 2006) (citing *Grease Monkey Int'l v. Montoya*, 904 P.2d 468 (Colo. 1995)).  "[T]he question of whether an employee is acting within the scope of the employment is a question of fact . . . . The trier of fact resolves conflicting evidence. . . ." *Raleigh v. Performance Plumbing and Heating, Inc.*, 130 P.3d 1011, 1019 (Colo. 2006) (en banc).  According to the Restatement of Agency, "[t]he fact that the predominant motive of the servant is to benefit himself . . . does not prevent the act from being within the scope of employment.  If the purpose of serving the master's business actuates the servant to any appreciable extent, the master is subject to liability if the act otherwise is within the service . . . ." Restatement (Second) Agency § 236, cmt. b (1958).  The Restatement's position with respect to dual-motive activities of an employee appears to the Court to be consistent with Colorado law.  "By the better reasoned view, where the employee is actuated both by the desire to accomplish a personal purpose and by the desire to serve his master, vicarious liability is properly imposed." *Courtright v. Pittman*, 264 F. Supp. 114, 120 (D. Colo. 1967) (applying Colorado law); *see Grease Monkey*, 904 P.2d at 473 (quoting with approval Warren A. Seavey, *Handbook of the*

*Law of Agency* § 83B (1964) ([employer] is liable only if the servant's conduct was *in some way* caused by an intent to serve his employer's interests. . . ." (emphasis added)).

To the extent coverage turns upon the question of whether Scherrer was acting in the scope of his employment with SCCI, Mountain States' motion for summary judgment must be denied. The testimony of Scherrer, Susan Phelps, Alex Nuzzo and Karen Nuzzo provides substantial evidence that prior to leaving on the trip to Albuquerque, Scherrer had decided to visit Adobe for the purpose of determining if Adobe could supply materials for use in SCCI's business. This evidence, if credited by the factfinder, would establish that the trip "was in some way caused by an intent to serve [SCCI's] interests." As previously noted, agency law in general, and Colorado law in particular, do not require that the employer's interests have been the only motive for the employee's activity in order for an activity to fall within the scope of employment. Further, under Colorado law, "[g]enerally, travel is within the scope of employment if it is at the express or implied request of the employer, or if it confers a benefit on the employer beyond the sole fact of the employee's arrival at work." *Shandy v. Lunceford*, 886 P.2d 319, 322 (Colo. Ct. App. 1994). Scherrer, as president of SCCI, had the authority to authorize a trip to Albuquerque, and the trip, at least as planned, would have conferred a benefit on SCCI by identifying (or ruling out) Adobe as an alternate source of building materials.

Mountain States' reliance on two Colorado decisions, *Pham v. OSP Consultants, Inc.*, 992 P.2d 657 (Colo. Ct. App. 1999), and *Capital Chevrolet Co. v. Industrial Commission of Colorado*, 410 P.2d 518 (1966), is misplaced. *Pham* involved an employee whose assignment to an out of state project required him to eat and sleep away from home. *Pham* turned upon the Court of Appeals' conclusion that the purpose of the employee's off-duty trip to a bar to drink "from the start was personal entertainment." 992 P.2d at 660. Here, although Scherrer's method of travel

8

clearly served his personal interest in recreational motorcycle riding, a jury could find that his intended purpose "from the start" was to further SCCI's interests by determining whether Adobe was an alternate source of building materials.

*Capital Chevrolet* was a workers' compensation case in which the Colorado Supreme Court looked to Judge Cardozo's classic formulation of the test for deciding whether a trip serving the employee's personal interests may also be considered to be in the course of the employer's business:

> We do not say . . .that service to the employer must be the sole cause of the journey, but at least if must be a concurrent cause. To establish [employer] liability, the inference must be permissible that the trip would have been made though the private errand had been canceled. . . .
>
> The test in brief. . . is this:  If the work of the employee creates the necessity for travel, he is in the course of his employment. though he is serving at the same time some purpose of his own. *** If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, *and* would have been canceled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk.

*Capital Chevrolet*, 410 P.2d at 159-60 (quoting *Marks' Dependents v. Gray*, 167 N.E. 181 (1929)) (quotation marks omitted; emphasis added). The record contains substantial evidence that a business purpose--determining whether Adobe could supply SCCI with building materials--was at least a concurrent cause of the trip to Albuquerque.  Moreover, the second sentence of Judge Cardozo's formula is cast in the conjunctive:  to constitute personal travel (1) work must have had no part in creating the necessity for travel, (2) the journey would have gone forward even if the business errand had been dropped, *and* (3) the journey would have been canceled if the private purpose was eliminated.  Here, the record contains substantial evidence that if accepted by the factfinder would negate the first two elements of Judge Cardozo's test for personal travel.

[Doc. 29-2 at 2, Doc. 64-1 at 8-9 (describing business reason for visiting Adobe); Doc. 59-1 at 50 (admitting that Scherrer would not have made the trip to Albuquerque if it had not included the visit to Adobe) ]

**CONCLUSION**

The evidence in the record establishes genuine issues of material fact as to whether Scherrer was acting to further SCCI's business interests at the time of the accident giving rise to the underlying action and this coverage dispute. Accordingly, Mountain States' motion for partial summary judgment must be denied.

WHEREFORE,

IT IS HEREBY ORDERED that Mountain States Mutual Casualty Company's *Motion for Partial Summary Judgment on the Declaratory Action* [Doc. 59] is **denied**.

**SO ORDERED this 10th day of September, 2010.**

_____
M. CHRISTINA ARMIJO
UNITED STATES DISTRICT JUDGE