IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MOUNTAIN STATES MUTUAL
CASUALTY COMPANY,

       Plaintiff/Counter-Defendant

vs.                                                          No. 09-CV-314-MCA/WDS

SOUTHERN COLORADO CONSTRUCTION, INC.,
and CHARLES SCHERRER,

       Defendants/Counter-Claimants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon *Mountain States Mutual Casualty Company's Motion for Partial Summary Judgment on Bad Faith, UIPA, and Punitive Damages Claims and Memorandum in Support*. [Doc. 58] The Court has considered the motion and supporting memorandum, Defendants-Counterclaimants' response, and Mountain States' reply, and is otherwise fully informed. For the reasons that follow, the Court will grant in part and deny in part the instant motion.

**BACKGROUND**

This insurance coverage dispute was brought as a declaratory judgment action by Mountain States against its named insured, SCCI, and Charles Scherrer, a shareholder and officer of SCCI. [Doc. 1] SCCI and Scherrer counterclaimed, asserting claims for declaratory relief, common-law bad faith,  and violation of NMSA 1978, § 59A-16-20. [Doc. 4]

Mountain States issued a business auto policy ("BAP"), designating SCCI as the named insured. The BAP contains the following provisions:

**SECTION I - COVERED AUTOS**

. . . .

**A.    DESCRIPTION OF COVERED AUTO DESIGNATION SYMBOLS**

> 9 = NONOWNED "AUTOS" ONLY.  Only those "autos" you do not
> own, lease, hire, rent or borrow that are *used in connection with
> your business*.  This includes "autos" owned by your employees
> . . . *but only while used in your business*. . . ."

**SECTION II - LIABILITY COVERAGE**

**A.    COVERAGE**

We will pay all sums an "insured" legally must pay as damages because of
"bodily injury" or "property damage" to which this insurance applies, caused by
an "accident" and resulting from the ownership, maintenance or use of a covered
"auto."
. . . .

We have the right and duty to defend any "suit" asking for damages. . . to which
this insurance applies.  However, we have no duty to defend "suits" for "bodily
injury" or "property damage" . . .not covered by this coverage form. . . .

**1.    WHO IS AN INSURED**

> The following are "insureds":

. . . .

a.    You[1] for a covered "auto."

[Doc. 1-2 at 28-29 (emphasis added)]

Mountain States issued a commercial umbrella liability policy (the "Umbrella Policy") to

SCCI as the named insured.  The Umbrella Policy contains the following provisions:

**SECTION I - COVERAGE**

1.    Insuring Agreement

---

[1]The BAP provides that "[i]f the Named Insured is a corporation. . . "you". . . refers to
the corporation . . . and not to the principals, officers or any other natural person."

2

a.     We will pay on behalf of the insured all sums in
excess of the "retained limit" which the insured
becomes legally obligated to pay as damages
because of "bodily injury" or "property damage" to
which this insurance applies. . . .

. . . .

**SECTION II - WHO IS AN INSURED**

1.     If you are designated in the Declarations as:

. . .

d.     An organization other than a partnership, joint
venture or limited liability company, you are an
insured.  *Your "executive officers"* and directors *are
insureds, but only with respect to their duties as
your officers* or directors.  Your stockholders are
also insured, but only with respect to their liability
as stockholders.

[Doc. 1-1 at 12, 18 (emphasis added)]

Mountain States admits that these policies were in effect from January 20, 2008 to

January 20, 2009. [Doc. 1 at 2, ¶ 7]

Scherrer owns a Harley-Davidson motorcycle, which he rides for recreation. [Doc. 59 at

3, ¶ 4]  Scherrer has a personal liability policy providing coverage for his motorcycle  [Doc. 59-1

at 36] Susan and Stuart Phelps are fellow motorcycle enthusiasts. [Doc. 59 at 3, ¶ 6] On Friday,

May 23, 2008, Scherrer's motorcycle collided with the Phelps' motorcycle during a trip to

Albuquerque, New Mexico.  Stuart and Susan Phelps  were severely injured.  In October, 2008,

the Phelps sued Scherrer for personal injury in Bernalillo County District Court.  [Doc. 58-1 at 7

("Complaint for Damages Caused by Negligent Operation of  a Motorcycle")]

Scherrer was provided a defense in the state court lawsuit by his personal automobile

liability insurer.  On January 29, 2009, attorney Thomas L. Grisham entered an appearance on

behalf of Scherrer in the underlying personal injury lawsuit. [Doc. 58-1 at 14] On February 20,

3

2009, Grisham wrote Tom Titsworth, the agent through whom SCCI purchased the BAP and

Umbrella Policy, stating that "I have reviewed the umbrella policy which you sold to Mr.

Scherrer and I am of the opinion, at this point, that it does provide coverage in this situation. . . ."

 [Doc. 59-1 at 36]  Grisham asked Titsworth to refer the claim to Mountain States.  [Doc. 59-1 at

36]  Titsworth's employer, Brown & Brown Insurance, faxed a notice of claim form and a copy

of Grisham's February 20, 2009 letter to Mountain States, which received them on or about

February 26, 2009.  In the space on the claim form for "DESCRIPTION OF OCCURRENCE,"

the form states:  "Insured on Motorcycle in New Mexico/ Rear Ended Other Motorcycle causing

bodily injury/possible lawsuit against commercial umbrella /*attorney claiming business trip*."

[Doc. 65-1 at 11(emphasis added)]  The claim was assigned to Mountain States claims manager

Tom Fanning.  Fanning's investigation culminated in a  March 30, 2009 letter from Mountain

States' counsel, Tim L. Fields, to Grisham.  Mountain States denied coverage under both the

Umbrella Policy and the BAP, citing the absence of evidence that Scherrer was using his

motorcycle for the business purposes of SCCI at the time of the accident. [Doc. 59-1 at 38-41]

According to Fanning, he denied coverage based on the following information:

> Besides the stuff that is in the--the factual information that's in [Fielding's
> March 30, 2009 ]letter, plus the stuff that is actually in the [claims] file which
> would indicate--which is more or less the motorcycle is not on the dec page, it
> was Memorial weekend, it was clear back--it wasn't given to us until February
> [2009] but the accident actually happened back  in May of '08.  Nobody said that
> it was business until way later than the accident.  There are interrogatories
> in which I know about those interrogatories and they were in there which those
> interrogatories were not--there was no--it was the actual answers to the
> interrogatories.

[Doc. 58-1 at 37] Fanning also testified that he relied on a statement by Grisham, apparently the

same statement described in Fields' March 30, 2009 letter to Grisham:

> You [Grisham] have also told me [Fields] that this was a weekend

4

>recreational trip for Mr. Scherrer during the Memorial Day holiday and that Mr.
>Scherrer had no specific business purpose in mind in accompanying Phelps to the
>store, although you stated that whenever Mr. Scherer is in a store of this type, he
>will look for potential business applications.

On June 30, 2009, Scherrer testified during his deposition that he had a business purpose for

visiting Adobe at the time of the accident. [Doc. 58-1 at 46] On July 20, 2009, after learning of

this statement, Mountain States agreed  to defend SCCI in the underlying personal injury suit

under a full reservation of  rights. [Doc. 58-1 at 48] On July 22, 2009, the Phelps amended their

complaint to name SCCI as a defendant, alleging that Scherrer was operating his motorcycle

"within the course and scope of his employment with [SCCI] and was advancing the business

interests of [SCCI]."  [Doc. 58-1 at 49]

**DISCUSSION**

**1.       Summary Judgment Standards**

Fed. R. Civ. P. 56(b) provides that "[a] party against whom relief is sought may move,

with or without supporting affidavits, for summary judgment on all or part of the claim."  Rule

56(c)(2) provides that "[t]he judgment sought should be rendered if the pleadings, the discovery

and disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law."  As our Court of

Appeals has succinctly stated:

>Summary judgment is appropriate only if "there is no genuine issue as to any
>material fact and . . .the moving party is entitled to a judgment as a matter of law."
>A fact is "material" if, under the governing law, it could have an effect on the
>outcome of the lawsuit. A dispute over a material fact is "genuine" if a rational
>jury could find in favor of the nonmoving party on the evidence presented.
>          The burden of showing that no genuine issue of material fact exists is borne
>by the moving party.  Where . . .the moving party does not bear the ultimate
>burden of persuasion at trial, it may satisfy this burden by identifying "a lack of
>evidence for the nonmovant on an essential element of the nonmovant's claim."

*Adamson v. Multi Community Diversified Serv., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008)."The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment." *Breyers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998). "It is not [the court's] province at the summary judgment stage to weigh the evidence or to make credibility determinations." *Sanders v. Southwestern Bell Telephone, L.P.*, 544 F.3d 1101, 1105-06 (10th Cir. 2008).

**2.    Bad Faith**

New Mexico recognizes a duty of good faith and fair dealing, implied into every contract by operation of law. *Watson  Truck & Supply Co. v. Males*,  111 N.M. 57, 60 (1990). In the case of a first-party insurance contract, bad faith consists of a frivolous or unfounded denial of coverage. *Sloan v. State Farm Auto. Ins. Co.*, 135 N.M. 106, 112 (2004).  An insurer acts in bad faith if it denies coverage without conducting a fair investigation and evaluation of the insured's claim of coverage.  NMRA 13-1702.[2]

In considering whether there is substantial evidence of bad faith, the Court bears in mind that a bad faith failure to investigate or evaluate may be as much a matter of material omissions as it is of affirmative acts.  Gaps in the evidence documenting the actions taken by Mountain States, therefore, may be suggestive of omissions by Mountain States, rather than a failure of proof by SCCI and Scherrer. The critical period for purposes of bad faith is between February 26, 2009, when Mountain States' was put on notice of  Scherrer's claim under the Umbrella Policy, and March 30, 2009, when Fields wrote Grisham denying coverage under both policies.

---

[2]The Court notes that "timely and fair" are stated conjunctively in NMRA 13-1702. Thus, an insurer's timely investigation and evaluation of a claim can still be in bad faith if it was not also fair.  Here the focus of SCCI and Scherrer's claim of bad faith is whether the investigation and evaluation was "fair," not whether it was timely.

Viewing the evidence in the light most favorable to SCCI and Scherrer as nonmovants, the Court concludes that there is substantial evidence from which a jury could find bad faith.   First, the delay between May 23, 2008 and February 2009,  when Scherrer first made a claim under the Umbrella Policy can readily be explained based on the jury's own experience as insurance laypersons:  it simply never occurred to Scherrer that the business purpose that led him to plan a trip to Adobe on his personal motorcycle could support coverage under the Umbrella Policy issued to SCCI.  It was only after Grisham reviewed the policies issued to SCCI with a lawyer's eye that the possibility of  coverage under the Umberlla Policy emerges. Fanning appears to have jumped directly to the conclusion that the delay was suspicious and necessarily suggestive of post-accident fabrication.   In this regard, a jury might also consider Fanning's failure obtain a statement directly from Scherrer as evidence of bad faith.  There is no explanation in the record for why Fanning could not have sat down with Scherrer in the presence of Grisham and obtained a firsthand statement from Scherrer.  Fanning's entire investigation appears to have consisted of reviewing information provided to him by Fields.

A jury might also find that Fanning and Mountain States attached inappropriate significance to Scherrer's choice of the pronoun "he," referring to Stuart Phelps who was leading the two motorcycles at the time of the accident, rather than "we, " referring to both the Phelps and Scherrer, in responding to an interrogatory in the underlying case inquiring into what caused the accident. [Doc. 58-1 at 24]   Taken in the overall context of the underlying suit and in the specific context of an interrogatory inquiring into the cause of the accident, a jury could find that Scherrer's use of "he" rather than "we" was entirely natural and appropriate, and that Mountain State's emphasis on this point  suggests an insurer straining to justify a foregone denial of coverage.

Further, there is no evidence proffered that prior to denying coverage Fanning or Mountain State attempted to identify the legal standards for determining when an employee's travel can be considered within the scope of employment for purposes of establishing respondeat superior liability.  The Court has previously determined that, under the law of Colorado, which Mountain States claims is the governing law with respect to the interpretation of the policies, a reasonable jury could find that Scherrer was acting within the scope of his duties as an employee and officer of SCCI at the time of the accident.  Mountain States appears to have relied upon an inflexible work/recreation dichotomy that is not mandated by agency law in general, or Colorado law in particular.  See Memorandum Opinion and Order [Doc. 125 at 7-8]  A jury could find bad faith in Mountain State's failure to investigate the governing law prior to ruling out the theory that Scherrer was acting within the scope of his employment at the time of the accident.  Mountain States cannot have properly evaluated its insureds' claim of coverage if it did not understand the governing legal standards, in particular the role of the employee's subjective state of mind in bringing his actions within the scope of his employment.

Lastly, there appears to be a material dispute of fact as to whether Field's March 30, 2009 letter accurately reflects Grisham's remarks.[3] [Doc. 58-1 at 42 (letter of February 25, 2010 from Grisham to Fields stating "You know that I have discussed with you the fact that I believe your statements relating to my statement are inaccurate.")]

The Court will deny Mountain States' motion to the extent is seeks summary judgment on the issue of bad faith.

_____

[3]Since Field's reference to Grisham's alleged admission is contained in the March 30, 2009 letter denying coverage, Grisham obviously had no opportunity to respond prior to Fields prior to the decision to deny coverage.

8

3.      **New Mexico Unfair Insurance Practices Act**

As one of the allegations set out in Count II of their Counterclaim, SSCI and Scherrer allege that "[t]he actions of Counter-Defendant constitute a violation of N.M.S.A.59-A-16-20." [Doc. 4 at 4, ¶ 6] Section 59A-16-20 contains fifteen subsections. In their response to Mountain States' motion for summary judgment, SCCI and Scherrer have identified Subsection C. as the provision on which their NMUIPA claims is based. [Doc. 65 at 8] Subsection C defines an unfair or deceptive practice as "failing to adopt and implement reasonable standards for the prompt investigation and processing of insured's claims arising under policies."

In its motion for summary judgment, Mountain States argues that even if a violation of Subsection C occurred, SCCI and Scherrer's NMUIPA claim fails because they have not come forward with evidence of damages caused by the alleged NMUIPA violation. The New Mexico Legislature has limited standing to bring a private NMUIPA action to those insureds who have "suffered damages as a result of a violation [of the NMUIPA]." NMSA 1978, § 59A-16-30. In their response, SCCI and Scherrer have not responded to this argument by pointing to evidence of actual damages that they have suffered as a result of Mountain States' alleged violation of Subsection C. Accordingly, the Court will grant summary judgment to Mountain States on SCCI and Scherrer's NMUIPA claim.

4.      **Punitive Damages**

*Citing Sloan v. State Farm Auto. Ins. Co.*, 135 N.M. 106, 113 (2004), Mountain States argues that it is entitled to summary judgment on SCCI and Scherrer's request for punitive damages for common law bad faith. The Court agrees that *Sloan* is controlling, but reaches the opposite conclusion. Under New Mexico law, "'[b]ad faith supports punitive damages upon a finding of entitlement to compensatory damages.' Accordingly, an instruction on punitive

9

damages will ordinarily be given whenever the plaintiff's insurance-bad-faith claim is allowed to proceed to the jury." *Sloan*, 135 N.M. at 110 (quoting *Jessen v. Nat'l Excess Ins. Co.*, 108 N.M. 625, 627 (1989)). "'As a general proposition, . . .once a plaintiff has made a prima facie showing sufficient to submit his or her fad-faith claim to the jury, the determination whether the insurer's bad-fiath conduct is deserving of punitive damages is for the jury to decide." *Id.* at 112.

The Court will deny Mountain Mutual's motion for summary judgment on punitive damages for bad faith.

**CONCLUSION**

Mountain States' motion is granted as to SCCI and Scherrer's NMUIPA claim,  it is denied in all other respects.

WHEREFORE,

IT IS HEREBY ORDERED that  *Mountain States Mutual Casualty Company's Motion for Partial Summary Judgment on Bad Faith, UIPA, and Punitive Damages Claims* [Doc. 58] is **granted** to the extent Count II of Defendants/Counter-claimants' Counterclaim [Doc. 4] may be construed as asserting a claim under the New Mexico Unfair Insurance Practices Act.

IT IS FURTHERED ORDERED that  *Mountain States Mutual Casualty Company's Motion for Partial Summary Judgment on Bad Faith, UIPA, and Punitive Damages Claims* [Doc. 58] is **denied** as to the issues of bad faith and punitive damages.

**SO ORDERED this 10th day of September, 2010.**

M. CHRISTINA ARMIJO
UNITED STATES DISTRICT JUDGE